[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11159
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-20574-CMA


CHARLES WELLONS,

Plaintiff-Appellant,

versus

MIAMI DADE COUNTY,
MIAMI-DADE TRANSIT AGENCY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 30, 2015)

Before TJOFLAT, WILSON and, JORDAN, Circuit Judges.

PER CURIAM:

Charles Wellons appeals from the district court's order granting summary

judgment in favor of Miami-Dade County and the Miami-Dade Transit Agency on

his claims of employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a). Mr. Wellons argues that the district court erred in granting summary judgment on his race discrimination claim for his five-day suspension, on his retaliation claim for his ten-day suspension, and on his retaliation claim for his termination.

For the reasons that follow, we affirm.

# I

Mr. Wellons, an African-American male, alleges that in August of 2008, Eric Muntan, MDTA's chief of safety and security, said that Mr. Muntan was the "new head nigger in charge." D.E. 24 at 3. Mr. Wellons alleges that, after he expressed dissatisfaction about the statement, Mr. Muntan retaliated against him by excluding him from meetings, overlooking him for assignments, and denying him a promotion. *Id.* In January of 2010, Mr. Wellons filed a complaint with the Miami-Dade County Office of Fair Employment Practices, alleging race discrimination, age discrimination, and retaliation. D.E. 66-7 at 2-3.

In June of 2011, Mr. Wellons received a five-day suspension. The Disciplinary Action Report ("DAR") stated that Mr. Wellons received the suspension for insubordination because he failed to attend a scheduled conference call and he hung up the phone when Horace Graham, his supervisor, reminded him about the meeting. D.E. 66-13 at 1-2. Mr. Wellons denied hanging up on Mr.

2

Graham, but admitted that he forgot about the conference call. D.E. 66-31 at 3-4. Ms. Lau, a personnel specialist with MDTA's Office of Civil Rights, testified that she recommended the five-day suspension because Mr. Wellons committed a clear act of insubordination, and other employees received a five-day suspension for insubordination when they had a clean disciplinary record. D.E. 51-30 at 21.

On July 6, 2011, Mr. Wellons filed a complaint with the Miami-Dade Commission on Ethics and Public Trust, alleging that Mr. Muntan and Mr. Graham issued the five-day suspension to retaliate against him for reporting contractual violations by 50 State Security—one of MDTA's security contractors—and for reporting a complaint of sexual harassment against Kelvin Gonzalez, a security supervisor. [D.E. 66-17 at 2-5]. Mr. Wellons also claimed that Mr. Muntan and Mr. Graham barred him from investigating the sexual harassment complaint because it was a personnel matter for 50 State Security. *Id.* at 5.

On July 18, 2011, Mr. Gonzalez filed a complaint against Mr. Wellons for harassment and retaliation. *See* D.E. 66-19 at 1. Maria Fajardo, a personnel specialist in MDTA's Office of Civil Rights, investigated the complaint and issued a report summarizing her findings on August 25, 2011. Ms. Fajardo determined that Mr. Wellons targeted Mr. Gonzalez, and she recommended that administrative action be taken against him. D.E. 66-18 at 3. In October of 2011, Mr. Muntan

issued Mr. Wellons a DAR and a ten-day suspension based on Ms. Fajardo's report and recommendation. D.E. 66-21 at 1-2.

In February of 2012, Mr. Wellons sent an e-mail to Mr. Graham and Mr. Muntan reporting that he observed Albert Montiel—an employee of Professional Protection and Investigations Agency, one of MDTA's contractors—sitting at his post with his pants unzipped. D.E. 66-24 at 1. According to Mr. Wellons, Mr. Montiel was "well equipped with enticements (juices and snacks) that may be appealing to the disadvantaged and young children." *Id.* On February 28, 2012, James Fernandez, the president of PPIA, sent an e-mail to Mr. Graham asking whether Mr. Wellons was implying in his e-mail that Mr. Montiel was a pedophile. D.E. 51-36 at 2.

On March 9, 2012, Mr. Fernandez sent an e-mail to Mr. Muntan and Mr. Graham reporting that Mr. Wellons called Reynaldo Rolo, PPIA's project manager, and questioned him about an EEOC charge and PPIA's internal procedures. D.E. 51-39 at 2. In the e-mail, Mr. Fernandez complained that this questioning was harassing and constituted tortious interference.[1] *Id.*

---

[1] Mr. Fernandez's e-mail to Mr. Muntan and Mr. Graham stated as follows: "Mr. Wellons' actions are causing undue harm to my relationship with my employees and the relationship Security Alliance enjoys with their employees. This behavior can be interpreted as tortious interference by instigating inflammatory accusations and responses by our employees to file complaints with governing authorities against us. Mr. Wellons' line of questioning to my staff is completely outside the realm of our contractual obligation to Miami Dade Transit. Furthermore, Mr. Wellons' behavior is causing irrevocable harm and I have no further options than to request his immediate removal from any oversight of our contract."

4

Mr. Fernandez's e-mail further stated: "Mr. Wellons'[s] behavior is causing irrevocable harm and I have no further options than to request his immediate removal from any oversight of our contract." *Id.* On March 14, 2012, Mr. Graham notified Mr. Wellons of the complaints against him and informed him that his contract oversight and administrative duties were being restricted. D.E. 66-26 at 2-3.

In April of 2012, Mr. Wellons sent a letter to Fair Employment Practices asserting that Mr. Muntan targeted him for objecting to Mr. Muntan's use of a racial epithet, which occurred in 2008. D.E. 66-27 at 1, 4, 6. He also claimed that Mr. Muntan discriminated against him based on his race and age and retaliated against him for a report to the Office of the Inspector General. *Id.* at 4. Additionally, he asserted that Mr. Muntan created a hostile work environment. *Id.* at 6.

In May of 2012, Mr. Wellons received another DAR. This one stated that MDTA received two complaints from PPIA about Mr. Wellons' Montiel report and his questioning of Mr. Rolo. D.E. 66-30 at 2-3. The DAR also stated that Mr. Gonzalez filed a second grievance following Mr. Wellons' failure to acknowledge his presence or inspect his credentials during an inspection on March 14, 2012. *Id.* at 2. Furthermore, the DAR stated that Mr. Wellons contacted a PPIA employee to

5

continue contractual oversight after he was ordered to end his administrative oversight of that contract. *Id*. at 2-3. [2]

Ysela Llort, the director of MDTA, terminated Mr. Wellons in July of 2012. *Id.* at 1. Ms. Llort interviewed Mr. Wellons prior to finalizing his termination. She asked Mr. Wellons to give her any information that he wanted her to consider before making her decision. D.E. 66-35 at 59. Mr. Wellons testified in an affidavit that Ms. Llort asked him no questions during his meeting with her about the termination recommendation, and he stated that she only asked him for a narrative of why he should not be terminated. D.E. 66-31 at 6-7.

---

[2] The DAR charged Mr. Wellons with violating paragraphs D, I, and S of the County's Personnel Rules Chapter VIII, Section 7. The relevant paragraphs of County's Personnel Rules provide as follows:

> (D) That the employee has violated any lawful or official regulation or order, or failed to obey any lawful and reasonable direction given him by a supervisor, when such violation or failure to obey amounts to insubordination or serious breach of discipline which may reasonably be expected to result in lower morale in the organization or result in loss, inconvenience or injury to the County service or to the public.
> (I) That the employee has been guilty of conduct unbecoming an employee of the County whether on or off duty, provided allegations shall be specific and shall describe the conduct which is the basis of the charge.
> (S) That the employee is antagonistic towards supervisors and fellow employees, criticizing orders, rules and policies, and whose conduct interferes with the proper cooperation of employees and impairs the efficiency of the County Service.

In support of the charges against Mr. Wellons, the DAR cited to three vendor complaints: the February 28, 2012, e-mail from Mr. Fernandez; the March 9, 2012, e-mail from Mr. Fernandez; and Mr. Gonzalez's second grievance filed against Mr. Wellons relating to an incident on March 14, 2012. D.E. 66-30 at 1-2.

Ms. Llort concluded that Mr. Wellons' account of the relevant events was not compelling because he did not address the complaints set out in the DAR. D.E. 66-35 at 72. She testified that she conducted an investigation by talking to Mr. Graham, Cathy Lewis, and Kelly Lau, reading the DAR documents and Mr. Wellons' additional information, and conducting a hearing with Mr. Wellons. *Id.* at 100. After her independent investigation, Ms. Llort upheld the dismissal recommendation. *Id.* at 101-02.

Following discovery, the County filed a motion for summary judgment. D.E. 52. The district court granted the motion in favor of the County on all claims. D.E. 84.

## II

We review the grant of a motion for summary judgment *de novo*, applying the same legal standard as the district court. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998). We view the evidence in the light most favorable to the non-moving party. *See id.* Summary judgment is appropriate "if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.*

On appeal, Mr. Wellons challenges the district court's ruling that he failed to show that the County's reasons for the five-day suspension were pretextual. Mr.

Wellons further argues that the district court erred in concluding that he did not establish a *prima facie* case of retaliation and that he did not show pretext for either of his retaliation claims. We conclude that the district court did not err in granting summary judgment because Mr. Wellons failed to establish that any of the County's proffered reasons for the five-day suspension, the ten-day suspension, or termination were pretext for unlawful discrimination or retaliation. Accordingly, we affirm.

### III

Title VII prohibits discrimination against an employee because of his race. *See* 42 U.S.C. § 2000e-2(a)(1). When a plaintiff lacks direct evidence of discrimination, courts use the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to analyze circumstantial evidence of discrimination. *See McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). A plaintiff establishes a *prima facie* case of discrimination by showing that: "(1) [he] is a member of a protected class; (2) [he] was subjected to adverse employment action; (3) [his] employer treated similarly situated [white] employees more favorably; and (4) [he] was qualified to do the job." *EEOC v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Once the plaintiff establishes a *prima facie* case, the defendant must state a legitimate, nondiscriminatory reason for the

adverse action. *McCann*, 526 F.3d at 1373. If the defendant does so, the plaintiff must show that the defendant's reasons are pretext for unlawful discrimination. *Id.*

The plaintiff may demonstrate pretext by showing that the defendant's proffered reason is a "coverup for a . . . discriminatory decision." *McDonnell Douglas Corp.*, 411 U.S. at 805. The plaintiff cannot merely recast the defendant's non-discriminatory reason; rather, he must meet the reason "head on and rebut it." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004). Generally speaking, a reason is pretextual only when it is false and the true reason for the decision is discrimination. *See Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007). *See also Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

An isolated, discriminatory comment that is unrelated to the challenged employment decision can contribute to a circumstantial case of pretext, but it is insufficient to establish a material issue of pretext by itself. *See Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002). In some cases, a plaintiff may demonstrate pretext by disputing the defendant's factual allegations and questioning its sincere belief that those facts existed at the time it made the

9

employment decision. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). *See also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (holding that an employer was entitled to judgment notwithstanding the verdict because, although the employee "may have convinced the jury that the allegations against him were untrue, . . . he certainly did not present evidence that [the employer's] asserted belief in those allegations was unworthy of credence.")

The district court correctly concluded that Mr. Wellons did not create a jury issue on pretext for his race discrimination claim. Mr. Wellons challenges the factual accuracy of Mr. Muntan's reasons for issuing him a five-day suspension, but he presents no evidence showing that Mr. Muntan—the decision maker who authorized the five-day suspension—disbelieved Mr. Graham's account of Mr. Wellons' insubordination. Because Mr. Wellons did not challenge Mr. Muntan's sincere belief about the facts leading to the suspension, he did not create a genuine issue of pretext by challenging the factual accuracy of the reasons for the suspension. *See Vessels*, 408 F.3d at 771 (noting that the plaintiff would have failed to establish pretext if he "only disputed that the incidents occurred, without calling into question [the employer's] sincere belief that they occurred"). *See also Elrod*, 939 F.2d at 1471.

Furthermore, Mr. Wellons failed to produce evidence showing that his five-day suspension was motivated by discrimination rather than by the proffered reasons. Mr. Wellons' evidence that Mr. Muntan once uttered a racial epithet did not create a genuine issue of pretext. Mr. Muntan used the racial epithet in August of 2008, and Mr. Wellons complained about the racial epithet in January of 2010—nearly a year and a half after the incident occurred. Furthermore, Mr. Wellons testified that Mr. Muntan did not use the epithet in his presence, and Mr. Wellons never heard Mr. Muntan use the epithet again. D.E. 51-12 at 109, 112**.** On this record, Mr. Muntan's use of a racial epithet does not establish a genuine issue of pretext because the remark was isolated and unrelated to any actions taken against Mr. Wellons. *See Rojas*, 285 F.3d at 1342-43.

## IV

We analyze claims of retaliation based on circumstantial evidence under the *McDonnell Douglas* framework. *See Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). Even assuming that Mr. Wellons met his burden of establishing a *prima facie* case of retaliation for his ten-day suspension and termination, the district court did not err in granting summary judgment because Mr. Wellons failed to establish that any of the County's proffered reasons for its decisions were pretextual.

11

When attempting to show pretext, the fact that an employer has departed from established guidelines or procedures may be evidence that it has attempted to conceal discriminatory motives. *See Brown v. Am. Honda Motors Co.*, 939 F.2d 946, 951 (11th Cir. 1991). *See also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1299 (11th Cir. 2006) (analyzing a discrimination claim and a retaliation claim together, and noting that "an employer's deviation from its own standard procedures may serve as evidence of pretext"). Even when an employer violates its own policies, however, "it does not *necessarily* indicate [pretext]." *Springer*, 509 F.3d at 1350 (race discrimination case) (emphasis added).

The County argued that the ten-day suspension was justified because Mr. Wellons unfairly targeted Mr. Gonzalez.  D.E. 66-18 at 3. Mr. Wellons responded that he established a genuine issue of pretext by pointing to Mr. Muntan's poor credibility, incorrect factual statements in Ms. Fajardo's report, and inconsistent testimony from Ms. Fajardo and Mr. Muntan about the reason for the suspension. Although Mr. Wellons disputes the County's factual assertions, he fails to establish a genuine issue of pretext because he does not challenge Mr. Muntan's sincere belief in the accuracy of Ms. Fajardo's report when he issued the ten-day suspension. D.E. 51-6 at 19.  *See Vessels*, 408 F.3d at 771; *Elrod*, 939 F.2d at 1471.

Mr. Wellons also attempts to establish pretext by arguing that MDTA deviated from its policies when issuing the ten-day suspension. MDTA's policy on disciplinary actions states that the immediate supervisor should conduct an investigation after learning about an incident, but it permits the supervisor to prepare a DAR immediately when an incident review is not required. D.E. 66-2 at 1-2. Mr. Muntan testified that he did not conduct an investigation before issuing the suspension because the human resources department was responsible for the investigation. D.E. 51-6 at 19.[3]

Mr. Wellons did not demonstrate that Mr. Muntan violated MDTA policy by issuing the DAR and the ten-day suspension based on Ms. Fajardo's investigation and report. Uncontradicted evidence showed that Mr. Muntan was not required to conduct an investigation in this case. Thus, Mr. Wellons did not demonstrate a departure from MDTA policy that could disguise retaliatory conduct. *See Brown*, 939 F.2d at 95; *Hurlbert*, 439 F.3d at 1299. In sum, Mr. Wellons did not show a genuine issue of fact as to whether MDTA's rationale for his ten-day suspension was a pretext for retaliation, and the district court did not err by granting summary judgment on this claim.

---

[3] MDTA's internal procedure for disciplinary action states that the immediate supervisor should conduct an investigation after learning about an incident, but it also provides that "[i]f an incident review is not required, such as in the case of a miss-out, a DAR should be prepared immediately." D.E. 66-2 at 1-2.

13

Similarly, the district court did not err in granting summary judgment on the second retaliation claim because Mr. Wellons failed to establish that the County's reasons for his termination were pretextual. Mr. Wellons contests the factual accuracy of the complaints that led to his termination, but he does not challenge the sincerity of Ms. Llort belief that Mr. Wellons committed the offenses for which he was terminated. Mr. Wellons cannot establish a genuine issue of pretext by merely challenging the factual accuracy of the claims contained in the DAR. *See Vessels*, 408 F.3d at 771; *Elrod*, 939 F.2d at 1471.

Mr. Wellons also argues that Mr. Graham, Mr. Muntan, and Ms. Llort deviated from MDTA's policies by failing to properly investigate the complaints against him. He argues that Ms. Llort did not ask him any questions, but the record indicates that Ms. Llort interviewed Mr. Wellons prior to finalizing the termination, during which she asked him to provide any information that he wanted her to consider. D.E. 66-35 at 58. Significantly, Mr. Wellons admits that, prior to the meeting with Ms. Llort, he sent Ms. Llort a "rebuttal of the charges" made against him. D.E. 66-31 at 6. Mr. Wellons further admits that, during the meeting, Ms. Llort "asked [him] to provide a narrative of the reasons why [he] should not be terminated." *Id.* at 7. Furthermore, Mr. Wellons did not produce any evidence showing that any of the alleged deviations from the investigation policy were motivated by a retaliatory animus.

14

The County suspended Mr. Wellons for ten days because Ms. Fajardo's report indicated that he used his position to unfairly target Mr. Gonzalez. *See* D.E. 66-18 at 3. The County terminated Mr. Wellons for violating three of the County's personnel rules. *See* D.E. 66-30. To support the decision to terminate Mr. Wellons, the County cited to three vendor complaints against him: the February 28, 2012, e-mail from Mr. Fernandez; the March 9, 2012, e-mail from Mr. Fernandez; and Mr. Gonzalez's second grievance against Mr. Wellons relating to an incident on March 14, 2012. D.E. 66-30 at 1-2. Although Mr. Wellons quarrels with the factual accuracy of the reasons for his ten-day suspension and termination, he fails to rebut the decision-makers' sincere belief that he committed the offenses for which he was suspended and terminated. Accordingly, Mr. Wellons fails to establish that the reasons for his ten-day suspension and termination were pretext for retaliation.

V

For the foregoing reasons, we affirm the district court's order granting summary judgment.

**AFFIRMED.**

15